IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE JEANEAN MCCARTY,<br><br>    Petitioner,<br><br>  v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS,<br><br>    Respondent.                      / | No. C 06-04712 CRB<br><br>**ORDER** |

In April of 2004, a jury convicted Renee Jeanean McCarty ("Petitioner") of several crimes, including petty theft. After filing a collateral attack upon that conviction in state court, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. She argues that there was insufficient evidence to support her conviction and that she is therefore entitled to federal habeas relief. For the reasons set forth below, her petition is DENIED.

**BACKGROUND**

Petitioner's conviction stems from her visit to a Wal-Mart in Clear Lake, California, on July 31, 2002. She arrived at the store in the evening, accompanied by a man and two children. She approached the jewelry counter and asked the store clerk whether Wal-Mart would repair one of her necklaces. The clerk replied that the store could not do so because Wal-Mart's policy was to repair only jewelry purchased at the store. Petitioner then produced another necklace, which she indicated had been purchased at Wal-Mart. The clerk agreed that the store would repair it.

As Petitioner left the jewelry display, another Wal-Mart customer alerted the store clerk to the possibility that Petitioner had shoplifted some rings that had been sitting on the top of the counter.  The clerk notified one of Wal-Mart's "Loss Prevention Associates," who followed Petitioner and confronted her as she was walking out of the store.  A physical altercation ensued between Petitioner the Wal-Mart employee.  She was subdued and detained.  No rings were recovered from Petitioner or her companions--one of whom testified that he had placed the rings in question back on the display counter before leaving the area.  Nor was Wal-Mart ever able to determine precisely which merchandise it lost, since the store did not have a specific inventory to identify missing items.  Nonetheless, as a result of the incident, Petitioner was arrested and eventually charged with (1) battery, a violation of California Penal Code § 244, and (2) petty theft, a violation of California Penal Code § 484(a), which was charged as a felony under California Penal Code § 666 because of Petitioner's other prior criminal convictions.

At trial, the prosecution produced the following evidence that Petitioner stole rings from the jewelry counter at Wal-Mart:

- First, Susan Bier testified that she was waiting in line behind Petitioner at the Wal-Mart jewelry counter when Petitioner asked about having her necklaces repaired.  Bier testified that she saw the store clerk bend down behind the counter and that simultaneously she saw Petitioner pick up two rings from the display counter and toss them to the man who was accompanying her.  Bier testified that, after Petitioner walked away, she told the store clerk what she had seen.

- Second, Inez Jonathans testified that she was working at the jewelry counter at Wal-Mart on July 31, 2002.  She stated that she was changing prices on a tray of rings for a clearance sale when Petitioner approached her about having certain necklaces repaired.  She testified that she agreed to repair one of Petitioner's two necklaces and bent down behind the display counter momentarily to retrieve a claim ticket for Petitioner.  She testified that she never saw Petitioner remove anything from the display counter, but she further testified that four or five rings were missing from the tray after Petitioner walked away.  At trial, Jonathans could not identify Petitioner as the customer with whom she had interacted, and she admitted that she had not done any formal inventory on the rings.

- Third, the prosecution played videotape from a Wal-Mart security camera.  The video showed Petitioner, as well as a man and two children, at the Wal-Mart jewelry counter at the on July 31, 2002.  The video further shows the Petitioner making three throwing

2

   motions and the man making three catching motions, though the video is not sufficiently detailed to determine what precise items were being thrown or caught.

- Fourth, Steve Hammon testified that he was working as a "Loss Prevention Associate" at Wal-Mart on July 31, 2002. He testified that he was summoned by Inez Jonathans about a possible shoplifting problem and, at her request, followed Petitioner out of the store. He testified that he and an assistant manager approached Petitioner about their security concerns. He testified that Petitioner became very angry and very hostile, accused him of harrassing her, resisted his requests to return to the store, and bit him when he tried to keep her from walking away.

- Fifth, James Bell, a detective with the Clear Lake Police Department, testified that he investigated two incidents of alleged shoplifting involing Petitioner--one at Wal-Mart and another at a store called Ray's Foods. As to the incident at Wal-Mart, he testified that he had been unable to determine whether the store sustained a loss of merchandise on July 31, 2002, although he did recall taking a statement from Inez Jonathans in which she indicated that she thought three to five rings were missing.

On this evidence, Petitioner was convicted of violating California Penal Code § 484, which makes it a crime for anyone to "steal, take, carry, lead, or drive away the personal property of another" with the intent permanently to deprive the owner of the property.

Petitioner appealed her conviction, arguing that the prosecutor had presented insufficient evidence to support the jury's verdict. The California Court of Appeal affirmed her conviction, and the California Supreme Court denied review.

Petitioner then filed this action in federal court. She again argues that the evidence presented by the prosecutor was insufficient to support a jury's determination that she was guilty of petty theft. She claims that the jury's conviction violated her constitutional right to due process of law under the Fourteenth Amendment of the United States Constitution, see, e.g., Jackson v. Virginia, 443 U.S. 307, 315-16 (1979), and that the decision of the California courts to uphold her conviction was "contrary to, or an unreasonable application of," those clearly established constitutional principles, see, e.g., Chien v. Shumsky, 373 F.3d 978, 982-83 (9th Cir. 2004) (en banc) (quoting 28 U.S.C. § 2254(d)).

## DISCUSSION

The basic constitutional principles governing this habeas petition are not in dispute. The Supreme Court has long held that "the Due Process Clause protects the accused against

3

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  A conviction obtained under a less rigorous standard therefore violates the Fourteenth Amendment, see Carella v. California, 491 U.S. 263, 265-66 (1989), as does a conviction obtained upon evidence that cannot reasonably support a finding of guilt beyond a reasonable doubt, see Jackson, 443 U.S. at 318.  Thus, when a convict challenges the sufficiency of the evidence used against him, the Fourteenth Amendment permits the conviction to stand only if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. As the Supreme Court stated in Jackson v. Virginia, a prisoner is entitled to habeas relief from his state-court conviction "if it is found that upon the record evidence adduced at the trial *no rational trier of fact* could have found proof of guilt beyond a reasonable doubt." Id. at 324 (emphasis added).

  The Ninth Circuit has not yet determined how the constitutional standard set forth by the Supreme Court's decision in Jackson applies in the context of a claim for federal habeas relief under 28 U.S.C. § 2254(d), which permits federal courts to issue the writ only if the state court decisions upholding the conviction were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See Garcia v. Carey, 395 F.3d 1099, 1102 (9th Cir.2005) ("It appears to be an open question in this circuit whether [AEDPA] adds a second level of deference to this standard, so that a federal habeas petitioner may obtain relief only by demonstrating that the state court's adjudication on the merits of the claim involved an unreasonable application of Jackson's 'no rational trier of fact' standard."); see also Chien, 373 F.3d at 983 ("We therefore do not consider the question concerning the impact, if any, of AEDPA on the Jackson standard.").

  This Court concludes, just as the Ninth Circuit has in several post-AEDPA cases involving a challenge to the sufficiency of the evidence, see Garcia, 395 F.3d at 1102; Chien, 373 F.3d at 983, that the extra layer of deference that AEDPA may or may not provide would

4

1  not make a difference on the facts of this case.  Here, the Court is satisfied that there was
2  sufficient evidence for a reasonable trier of fact to conclude beyond a reasonable doubt that
3  Petitioner was guilty of violating California Penal Code § 484.  One eyewitness, a customer,
4  saw her take rings from a Wal-Mart jewelry display counter, throw them to a compainion,
5  and walk away.  Another eyewitness, a Wal-Mart employee who was pricing the rings for
6  sale, testified that anywhere from three to five rings went missing from a tray of jewelry after
7  Petitioner's visit to the counter.  Videotape from Wal-Mart security cameras corroborated
8  this testimony, showing the Plaintiff making throwing motions to her companion while the
9  store clerk was bending down behind the counter.  A Wal-Mart security guard testified that
10 Petitioner became angry and abusive when he confronted her about the situation, and that she
11 even resorted to biting him when he tried to take her inside.  Viewing this evidence in the
12 light most favorable to the prosecutor, a jury could easily conclude that Petitioner stole the
13 rings and intended to deprive Wal-Mart of them permanently.  The Court's holds firm in this
14 view of the evidence's sufficiency, notwithstanding the fact that the rings in question were
15 never recovered (a fact that is unsurprising given that the person last known to be in
16 possession of them, the companion, was not followed by security personnel),
17 notwithstanding the fact that the loss to Wal-Mart was never determined with precision (a
18 fact that follows only from Wal-Mart's lack of a precise inventory system), and also
19 notwithstanding the companion's testimony that he placed the tossed rings back on the
20 jewelry counter (testimony from a co-defendant which the jury was free to credit or not).
21       Because a reasonable trier of fact could have concluded on the evidence of this case
22 that Petitioner was guilty of the crime with which she was charged, her claim for federal
23 habeas relief is without merit.  Accordingly, her petition is hereby DENIED.
24       **IT IS SO ORDERED.**
25
26
27 Dated: January 18, 2007                CHARLES  R. BREYER
                                          UNITED STATES DISTRICT JUDGE
28